[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14822
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 23, 2011
JOHN LEY
CLERK

Agency No. A087-026-989

RAHUL BERI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 23, 2011)

Before TJOFLAT, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Rahul Beri petitions for review of the Board of Immigration Appeals's

(BIA) affirmance of the Immigration Judge's (IJ) denial of his motion for

adjustment of status. The BIA concluded that because Beri had served aboard a

vessel in the capacity of a crewman, and had sought and gained admission to the

United States because of his occupation, Beri qualified as a crewman and thus was

ineligible for adjustment of status. In his petition, Beri argues that the BIA

reached this decision in error.[1] After a thorough review of the record, we deny the

petition in part and dismiss it in part.

In 2000, Beri, a native and citizen of India, obtained a crewman visa and

began working as a crewman on a sailing ship. Between October 2000 and

January 2001, Beri entered the United States six times as a crewman and was

granted a crewman's landing permit, Form I-95. The I-95 visa gave Beri

authorization to remain in the country until his ship left port. On Beri's last entry

into the United States under the I-95 permit, Beri remained here longer than

authorized. According to the record, on January 31, 2001, Beri and several other

---

[1] Beri also argues that he should have been charged with fraud, which would have made
him eligible for a waiver. We lack jurisdiction to hear any cause or claim by an alien arising
from the decision or action by the Attorney General to commence proceedings against an alien,
and therefore, will not address this issue. 8 U.S.C. § 1252(g); *see also Reno v. American-Arab
Anti-Discrimination Comm*., 525 U.S. 471, 484-87 (1999). We dismiss the petition in part on
this ground.

crew members left the ship and did not return. The ship's crew alerted the Immigration and Naturalization Service that those crew members had deserted.

In 2002, Beri married a U.S. citizen, and his wife filed an immigrant visa petition, Form I-130, which was denied. In 2005, Beri married his second wife and filed a second Form I-130, which was approved. Beri then moved to adjust his status to that of a legal permanent resident. In March 2008, the Citizen and Immigration Service determined that Beri was not eligible for adjustment of status because he entered the country as a crewman and thus was statutorily ineligible for the requested relief. The Department of Homeland Security (DHS) then issued a notice to appear, charging Beri as removable under 8 U.S.C. § 1227(a)(1)(B)

At the removal hearing, Beri admitted the allegations in the notice to appear, including that he had entered the United States as a crewman. Nevertheless, he argued that he was not a crewman because he had committed fraud and misrepresentation upon entry in January 2001 when he presented his I-95 petition and stated his intent to depart with his ship. He explained that he never intended to depart. He then argued that the DHS should have charged him as inadmissible due to this fraud, which would have made him eligible for a waiver of inadmissibility under 8 U.S.C. § 1182(i).

The IJ determined that Beri had entered the United States as a crewman and thus was ineligible to adjust his status. The IJ further found that Beri was not eligible for any waiver because he had not been charged with fraud.[2]

Beri appealed to the BIA, which concluded that Beri qualified as a crewman because he served aboard the ship in that capacity and he had sought and gained admission to the United States because of his occupation. The BIA also noted that Beri had obtained a Form I-95 petition allowing him to enter the country as a crewman, and that his wife had listed him as a crewman in the I-130 petition. The BIA rejected Beri's argument that it should consider his subjective intent because to do so would undermine Congress's intent in limiting access to adjustment of status by those who enter the country easily as a result of their occupation. The BIA also found that it lacked jurisdiction to review the discretionary decision whether to charge Beri with fraud. Beri now seeks review in this court.

We review only the BIA's decision, except to the extent that it expressly adopts the IJ's opinion. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, because the BIA issued its own decision, we review the BIA's decision. We review the decision of the BIA to determine whether it is supported by reasonable, substantial, and probative evidence on the record considered as a

---

[2] The IJ granted Beri's request for voluntary departure.

4

whole.  *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010) (quoting *Al Najjar v. Ashcroft,* 257 F.3d 1262, 1283–84 (11th Cir. 2001)).  We review questions of law, including the BIA's statutory interpretations, *de novo*.  *De Sandoval v. U.S. Att'y Gen.*, 440 F.3d 1276, 1278 (11th Cir. 2006).

When we review the BIA's construction of a statute that it administers, we apply *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) and will defer to the BIA's interpretation of the statute if it is reasonable and does not contradict the clear intent of Congress.  *Quinchia v. U.S. Att'y Gen.*, 552 F.3d 1255, 1258 (11th Cir. 2008).  Under *Chevron*, the first step of our analysis is to determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Chevron, U.S.A., Inc.*, 467 U.S. at 842-43.  But "when . . . the statute is silent or ambiguous with respect to a specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Quinchia*, 552 F.3d at 1258 (quotation and alterations omitted).

Under 8 U.S.C. § 1255, an alien may adjust status to that of permanent resident if: (1) the alien makes an application for such adjustment; (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for

permanent residence; and, (3) an immigrant visa is immediately available to him at the time his application is filed. 8 U.S.C. § 1255(a). An alien crewman is not eligible to adjust his status. 8 U.S.C. § 1255(c)(1). The term "crewman" means "a person serving in any capacity on board a vessel." 8 U.S.C. § 1101(a)(10).

The BIA has found that two elements are required for an alien to constitute a crewman: (1) the alien must be serving aboard a vessel in a capacity required for its normal operation; and, (2) the alien must be seeking and gain admission to the United States because of his occupation in that role. *Matter of Campton*, 13 I&N Dec. 535, 537 (BIA 1970). The BIA has consistently examined the type of visa an alien possessed, as well as the nature of his admission, to determine whether he should be considered a crewman. *Matter of G-D-M-*, 25 I&N Dec. 82, 85 (BIA 2009). By choosing to seek entry to the United States as a crewman, an alien agrees to the limitations associated with that status and cannot avoid the consequences of those restrictions in removal proceedings by claiming not to be a crewman. *Id*. at 84-85. If it is apparent that the alien was issued a visa as a crewman and entered the United States in pursuit of his occupation as a seaman, then he is to be regarded as an alien crewman. *Id*. at 85. The dispositive issue is whether the alien entered the United States in pursuit of his calling as a seaman. *Parzagonis v. I.N.S.*, 747 F.2d 1389, 1390 (11th Cir. 1984).

6

In this case, the BIA properly concluded that Beri qualified as a crewman.[3] Beri obtained a crewman visa and entered the United States on this visa numerous times. He also obtained a crewman's landing permit, which he used on each of his stays here. Moreover, when his wife applied for an immigrant visas on Beri's behalf, she indicated that he was a crewman. Thus, the BIA's conclusion is proper and Beri was ineligible for adjustment of status.

**PETITION DENIED IN PART, DISMISSED IN PART.**

---

[3] Beri also argues that he was not a crewman because he did not serve in good faith. *See* 8 U.S.C. § 1101(a)(15)(D). Congress has not directly spoken on the issue of subjective and objective intent with respect to an alien's classification as a crewman. 8 U.S.C. § 1101(a)(15)(D)(i). Because the statute is silent, the question is whether the BIA's interpretation is based on a permissible construction of the statute. *Quinchia*, 552 F.3d at 1258. Here, we conclude that the BIA's interpretation is reasonable. Based on the language in § 1255(c), it was unlikely that Congress intended for an alien to obtain entry into the United States as a crewman, but not be subject to the limitations on adjustment of status merely because of his subjective intent. 8 U.S.C. § 1255(c). Thus, the BIA's interpretation is entitled to *Chevron* deference. *See Quinchia*, 552 F.3d at 1258.