**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3534
_____

EDMUNDO EDUARDO CHICA-ROMAN,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A089-002-742)
Immigration Judge Annie S. Garcy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 8, 2012

Before: SLOVITER, GREENAWAY, JR., and COWEN, Circuit Judges

(Opinion filed: February 23, 2012)
_____

OPINION
_____

PER CURIAM

Edmundo Eduardo Chica-Roman, a native and citizen of Ecuador, petitions for

review of an order of the Board of Immigration Appeals ("BIA") affirming the decision

of the Immigration Judge ("IJ") pretermitting his applications for adjustment of status and

cancellation of removal because he was barred from such relief as an alien crewman. For the following reasons, we will deny the petition for review.

In 1996, Chica-Roman obtained a "C-1/D" visa[1] from the United States Consulate in Ecuador. He was admitted to the United States in New York, New York, as a "C-1 nonimmigrant in transit" authorized to remain in the United States until May 2, 1996. In April 2009, he was placed in removal proceedings, with charges under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as an alien who has remained in the United States for a time longer than permitted.

An IJ hearing was held in which Chica-Roman, through his attorney, admitted to the allegations in the Notice to Appear. As relief from removal, he sought adjustment of status under INA § 240A(b), 8 U.S.C. § 1229b(b), or in the alternative, cancellation of removal under INA § 245, 8 U.S.C. § 1255. At the hearing, Chica-Roman testified that a friend provided him with paperwork to apply for a visa as a marine crewman entering the United States in transit to Japan. His friend also arranged to have Chica-Roman placed on a "roll call" to work as a kitchen helper on a ship in Japan. Chica-Roman stated that he presented the paperwork to the United States Consulate and was issued a C-1/D visa.[2] Chica-Roman testified that his specific intent when entering the United States was to

---

[1] A "C-1" visa classification is given to a nonimmigrant in immediate and continuous transit through the United States. A "D" visa classification is given to a nonimmigrant accorded "alien crewman" status. See INA § 101(a)(15)(C), (D), 8 U.S.C. § 1101(a)(15)(C), (D).

[2] Chica-Roman testified that he never reviewed the documents and did not recall

2

remain in the United States for two years. He never intended to work on a ship or travel to Japan, but he prepared a story, that he was in transit to Japan to pick up a ship to bring back to Ecuador, in case he was questioned by an immigration officer.[3]

The IJ acknowledged that Chica-Roman was admitted into the United States as a C-1 nonimmigrant in transit, and noted that it is not uncommon for a nonimmigrant visa to be issued using more than one category.[4] The IJ found that Chica-Roman was issued a visa based specifically on his representation that the purpose of his visit to the United States was to permit him to enter the United States in order to join a ship in Japan as a crewman. Thus, the IJ concluded that Chica-Roman entered the United States as a crewman in transit and was statutorily ineligible for cancellation of removal or adjustment of status.

The BIA affirmed the IJ's decision on appeal. The BIA also acknowledged that Chica-Roman was admitted into the United States as a C-1 nonimmigrant in transit. The BIA agreed with the IJ's determination that he was a crewman for purposes of eligibility for adjustment of status and cancellation of removal because he secured his admission to the United States as a crewman in transit. Thus, the BIA rejected Chica-Roman's

_____

being questioned about his application.

[3] Chica-Roman testified that did not recall being questioned by an immigration officer about his entry into the United States.

[4] The IJ theorized that a crewman might require a C-1 transit visa to enter the United States at one border and require a D crewman visa for the purpose of joining his vessel at another border.

3

argument that he should not be considered a crewman because he never had any intention of ever becoming a crewman. Chica-Roman filed this timely petition for review.

We have jurisdiction under INA § 242(a), 8 U.S.C. § 1252(a)(1), to review the question whether Chica-Roman is statutorily ineligible for cancellation of removal or adjustment of status.[5] Where the BIA issues a decision on the merits, we review only the BIA's decision. However, we will look to the IJ's analysis to the extent that the BIA deferred to or adopted it. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). Our review of legal conclusions is de novo, subject to principles of deference. Wu v. Att'y Gen., 571 F.3d 314, 317 (3d Cir. 2009). "We apply substantial evidence review to agency findings of fact, departing from factual findings only where a reasonable adjudicator would be compelled to arrive at a contrary conclusion." Mendez-Reyes v. Att'y Gen., 428 F.3d 187, 191 (3d Cir. 2005).

An alien who entered the United States as a crewman is ineligible for adjustment of status and cancellation of removal. See INA § 240A(c)(1), 8 U.S.C. § 1229b(c)(1); INA § 245(c), 8 U.S.C. § 1255(c). The term crewman is defined as "a person serving in any capacity on board a vessel or aircraft" "who intends to land temporarily and solely in pursuit of his calling as a crewman and to depart from the United States with the vessel or aircraft on which he arrived or some other vessel or aircraft." INA § 101(a)(10),

---

[5] The Government contends that we lack jurisdiction to consider the petition for review because Chica-Roman failed to exhaust his administrative remedies. We disagree. Review of record demonstrates that Chica-Roman sufficiently placed the BIA on notice of his argument that he did not enter the United States as a crewman. See

(15)(D)(i), 8 U.S.C. § 1101(a)(10), (15)(D)(i).[6]  In determining whether an alien should be considered a crewman, the type of visa the alien possessed and the circumstances surrounding the alien's admission into the United States are examined.  In re G-D-M-, 25 I. & N. Dec. 82, 84-85 (BIA 2009).

Chica-Roman contends that there was no evidence to support the BIA's finding that he entered the United States as a crewman.  Chica-Roman argues that he was admitted as a C-1 nonimmigrant in transit pursuant to INA § 101(a)(15)(C), 8 U.S.C. § 1101(a)(15)(C), not a "crewman" as defined in INA § 101(a)(15)(D), 8 U.S.C. § 1101(a)(15) (D), emphasizing that he was issued an I-94 entry document admitting him into the United States as a C-1 alien in transit.  Additionally, Chica-Roman argues that he did not enter the United States as a crewman because he never was a crewman and he did not express any intent to become a crewman.

We agree with the BIA that the pertinent inquiry in determining whether Chica-Roman is a crewman is not the entry document the United States immigration authority issued to him or his intentions, but whether Chica-Roman was issued a visa as an alien crewman and entered the United States as a crewman.  See In re G-D-M-, 25 I. & N. Dec. at 86 n.6.  Substantial evidence supports the BIA's determination that Chica-Roman was

---

Joseph v. Att'y Gen., 465 F.3d 123, 126 (3d Cir. 2006).
        [6] To the extent that Chica-Roman argues that he is not a crewman because he entered the United States to join a vessel in Japan, not in the United States, this argument fails.  The definition of a crewman does not require the alien to serve on a vessel departing from the United States.  See INA § 101(a) (15)(D)(i), 8 U.S.C. § 1101(a) (15)(D)(i).

issued a visa as an alien crewman in transit, as Chica-Roman testified that he acquired his visa by representing to the United States Consulate in Ecuador that he would be entering the United States as a marine crewman in transit to work on a vessel in Japan. "By choosing to seek entry to the United States as a crewman, [Chica-Roman] agreed to the limitations associated with that status. Therefore, he cannot now avoid the consequences of those restrictions in removal proceedings by claiming not to be a crewman." Id. at 84-85.

We conclude that no reasonable adjudicator would be compelled to arrive at a conclusion contrary to the BIA's. Accordingly, we will deny the petition for review.