[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-16000
Non-Argument Calendar
_____

Agency No. A089-435-697

MARIA F. PETITSON,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 13, 2012)

Before EDMONDSON, HULL and FAY, Circuit Judges.

PER CURIAM:

Maria Petitson petitions for review of the Board of Immigration Appeals's ("BIA") order dismissing her appeal of the Immigration Judge's ("IJ") denial of her application for adjustment of status, filed pursuant to the Immigration and Nationality Act ("INA") § 245, 8 U.S.C. § 1255.  On appeal, Petitson argues that the BIA erred as a matter of law in determining that Petitson was ineligible for adjustment of status based on a finding that she entered the United States as an alien crewman.  After review, we deny Petitson's petition for review.

## I.  BACKGROUND FACTS

### A.    "C-1/D" Visa

Petitison, a citizen of the Philippines, is an experienced crewman.  On January 14, 1997, Petitson went to the U.S. embassy in Bridgetown, Barbados and obtained a "C-1/D" visa for entry into the United States, with an expiration date of January 12, 2002.  As recounted later, Petitson then came to the United States and joined the crew of a vessel.

An alien crewman traveling to meet a vessel in the United States is issued a "C-1/D" visa, which is a dual "C-1" and "D" visa.  A "D" visa is given to a nonimmigrant alien serving aboard a vessel or aircraft "who <u>intends to land temporarily and solely in pursuit of his calling as a crewman and to depart from the United States with the vessel or aircraft on which he arrived or some other</u>

vessel or aircraft."  See INA § 101(a)(15)(D)(i), 8 U.S.C. § 1101(a)(15)(D)(i) (emphasis added); 8 C.F.R. § 214.1(a)(2); see also 22 C.F.R. § 41.41 ("An alien is classifiable as a nonimmigrant crewman upon establishing to the satisfaction of the consular officer the qualifications prescribed by INA [§] 101(a)(15)(D)").  A "C-1" visa is given to a nonimmigrant alien in immediate and continuous transit through the United States.  INA § 101(a)(15)(C), 8 U.S.C. § 1101(a)(15)(C); 8 C.F.R. § 214.1(a)(1)(ii), (2).  As mentioned above, Petitson received a "C-1/D" visa.  The "D" symbol on Petitson's visa indicates that a consular officer gave Petitson "alien crewman" status under the INA.  See 22 C.F.R. §§ 41.12, 41.41.

## B.    1998 Admission to United States

On June 1, 1998, Petitson presented her "C-1/D" visa to an immigration officer in Los Angeles and was admitted to the United States as a "C-1" nonimmigrant alien in transit with authorization to remain until June 29, 1998.  Petitson was issued a Form I-94 (Arrival-Departure Record) admitting her with a "C-1" classification.[1]

Petitson traveled to New Orleans, where, the next day, June 2, 1998,

---

[1]Unless otherwise exempted, an arriving nonimmigrant is issued a Form I-94 at the time of entry and then must surrender the Form I-94 when she leaves.  8 C.F.R. § 235.1(h).  The Form I-94 is "evidence of the terms of admission."  Id.  Petitson's Form I-94 is not in the record.  In September 2002, Petitson applied for a replacement Form I-94, and her request was approved.  The replacement Form I-94 also is not in the record.  However, the parties do not dispute that Petitson's Form I-94 indicated admission as a "C-1" nonimmigrant.

3

Petitson joined the crew of the M/V Enchanted Capri as a bartender. Petitson's employment ended on February 19, 1999. At that time, Petitson disembarked from the M/V Enchanted Capri in Florida, where she lived, despite the fact that her authorization to remain in the United States in her visa had expired in June 1998. Petitson's Seafarer's Identification and Record Book reflects these dates of service on the M/V Enchanted Capri.[2]

## C.    2002 Marriage

Three years later, on June 18, 2002, Petitson married a U.S. citizen in Fort Lauderdale, Florida. On September 27, 2002, Petitson's husband filed a petition for alien relative (I-130) on Petitson's behalf, which indicated that Petitson would be applying for adjustment of status. On May 17, 2004, the Immigration and Naturalization Service approved the I-130 petition, but the approval notice stated that, based on evidence submitted with the I-130 petition, Petitson was not eligible for adjustment of status.

In April 2007, Petitson filed an I-485 application for adjustment of status to lawful permanent resident. On January 2, 2008, the Department of Homeland

---

[2]Petitson's Seafarer's Identification and Record Book was issued by the Philippines Department of Transportation and Communications Maritime Industry Authority "for the purpose of providing the holder . . . with identity papers for travel to or from an assigned vessel, and of providing a record of the holder's sea service."

Security ("DHS") denied Petitson's application because Petitson had been admitted into the United States as a "C-1/D" crewman on June 1, 1998, and, therefore, was statutorily ineligible to adjust her status.

### D.    2008 Notice to Appear

On June 2, 2008, the DHS issued a Notice to Appear ("NTA"), charging Petitson with removability because she had remained in the United States for a longer time than permitted, in violation of INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B).  At a subsequent calendar hearing on October 1, 2008, Petitson admitted the allegations in the NTA.  The IJ found that removability was established by clear and convincing evidence.

Petitson indicated she planned to renew her application for adjustment of status.  On October 31, 2008, the DHS moved to pretermit Petitson's application for adjustment of status on the basis that Petitson (1) was admitted as an alien crewman in 1998 and (2) therefore was ineligible to adjust her status to permanent resident.  See INA § 245(c)(1), 8 U.S.C. § 1255(c) (1) (providing that adjustment of status under "subsection (a) of this section shall not be applicable to . . . an alien crewman"); see also 8 C.F.R. § 1245.1(b)(2) (providing that "[a]ny alien who, on arrival in the United States, was serving in any capacity on board a vessel or aircraft or was destined to join a vessel or aircraft in the United States to serve in

5

any capacity thereon" is not eligible for adjustment of status).

After extensive briefing and argument at several hearings, the IJ concluded that Petitson was statutorily ineligible for adjustment of status "as she is an alien crewman." In support of this finding, the IJ stated: (1) Petitson was issued a "C-1/D" nonimmigrant visa, and, in order to qualify for that visa, Petitson had to establish either that she was going to be a crewman traveling in the United States to join a vessel or aircraft or that she would be a crewman employed on a vessel or aircraft when she arrived in the United States; (2) Petitson was admitted into the United States on June 1, 1998, as a "C-1" alien in transit, indicating that she was a crewman traveling to the United States to join a vessel or aircraft based on her "C-1/D" visa; (3) the day after Petitson was so admitted, she embarked on the M/V Enchanted Capri as a bartender; and (4) Petitson's seaman book indicated that she was commissioned on the M/V Enchanted Capri until February 19, 1999, when she disembarked.

Based on this record, the IJ found that (1) Petitson arrived in the United States on June 1, 1998 as an alien in transit to join a vessel as a crewman, and (2) an alien crewmember is statutorily barred from applying for adjustment of status under INA § 245(c), 8 U.S.C. § 1255(c). Accordingly, the IJ granted the DHS's motion to pretermit Petitson's application for adjustment of status.

6

The BIA dismissed Petitson's appeal.  The BIA emphasized that Petitson (1) was issued a "C-1/D" visa, (2) conceded that she entered the United States on June 1, 1998 to work aboard the M/V Enchanted Capri, and (3) joined the crew of that vessel the following day.  Agreeing with the IJ, the BIA concluded that the dispositive fact was that Petitson entered the United States in pursuit of her calling as a seaman; the fact that she was admitted in "C-1" status did not prevent her from being classified as a "alien crewman."

Petitson timely petitioned for review.[3]

## II.  DISCUSSION

The Attorney General, at his discretion, may adjust the status of an alien to that of an alien lawfully admitted for permanent residence if the alien meets certain requirements.  INA § 245(a), 8 U.S.C. § 1255(a).  An alien bears the burden of proving her eligibility for adjustment of status.  INA § 240(c)(4)(A), 8 U.S.C. § 1229a(c)(4)(A).  As noted earlier, however, alien crewmen are statutorily

---

[3]We have jurisdiction to review non-discretionary legal determinations as to statutory eligibility for discretionary relief.  Alvarado v. U.S. Att'y Gen., 610 F.3d 1311, 1314 (11th Cir. 2010); see also INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D). Thus, we have jurisdiction to review Petitson's claim challenging the legal determination that she is statutorily ineligible for adjustment of status.

We review the BIA's decision and the IJ's decision "[i]nsofar as the BIA adopts the IJ's reasoning."  Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1230 (11th Cir. 2006).  We review questions of law de novo, including the BIA's statutory interpretation.  De Sandoval v. U.S. Att'y Gen., 440 F.3d 1276, 1278 (11th Cir. 2006).

ineligible for adjustment of status.  INA § 245(c), 8 U.S.C. § 1255(c); see also 8 C.F.R. § 1245.1(b)(2).  The INA defines a "crewman" as "a person serving in any capacity on board a vessel or aircraft."  INA § 101(a)(10), 8 U.S.C. § 1101(a)(10).  Furthermore, the INA excludes from the definition of "immigrant" an "alien crewman serving in good faith as such in a capacity required for normal operation and service on board a vessel . . . who intends to land temporarily and solely in pursuit of his calling as a crewman and to depart from the United States with the vessel or aircraft on which he arrived or some other vessel or aircraft."  Id. § 101(a)(15)(D)(i), 8 U.S.C. § 1101(a)(15)(D)(i).

The BIA reads these two INA provisions, § 101(a)(10) and § 101(a)(15)(D)(i), "in conjunction when construing the crewman provision" in INA § 245(c).  Matter of Loo, 15 I. & N. Dec. 601, 603 (BIA 1976).  Thus, the BIA "examine[s] [the] alien's visa and the circumstances surrounding his entry into the United States to determine if he entered as a crewman."  See Matter of G-D-M-, 25 I. & N. Dec. 82, 85 (BIA 2009).[4]  This Court has acknowledged that the "focal issue" in determining whether an alien qualifies as a crewman "is

---

[4]We apply Chevron deference to the BIA's interpretation of a statute it administers if it is reasonable and does not contradict the clear intent of Congress.  Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1195 (11th Cir. 2006).  Here, we defer to the BIA's reasonable interpretation of the INA's definition of "alien crewman."

8

whether [the] petitioner entered the United States in pursuit of [her] calling as a seaman." Parzagonis v. I.N.S., 747 F.2d 1389, 1390 (11th Cir. 1984) (citing and discussing Matter of Goncalves, 10 I. & N. Dec. 277 (BIA 1963)). If it is apparent that an alien was issued a visa as a crewman and entered the United States in pursuit of that occupation, the alien is a crewman. Matter of G-D-M-, 25 I. & N. Dec. at 84-85 (relying on Matter of Goncalves and Matter of Tzimas, 10 I. & N. Dec. 101 (BIA 1962)). Thus, the alien need not already be employed as a crewman, so long as the alien enters the United States "in pursuit of employment as a crewman." Id. at 84.

Indeed, Matter of G-D-M- involved facts very similar to this case. The alien entered the United States on a "C-1/D" visa and was issued a Form I-94 that classified him as a "C-1" nonimmigrant in transit. Id. at 83. At the time of entry, the alien possessed a Seaman's Service Record Book and planned to work on a ship, but did not have a license to work aboard a specific ship. Id. Even though the alien never found work on a ship, the BIA concluded that the alien was a crewman because he secured a visa as a crewman and entered the United States with the intention to work as a crewman. Id. at 83-85.

Here, the BIA did not err in determining that Petitson was an alien crewman and thus that she failed to carry her burden to show she was eligible to adjust her

9

status.  The record establishes that Petitson was an experienced seafarer who possessed a seaman's book.  Petitson applied for and obtained a "C-1/D" visa as an alien crewman in transit, which she used to enter the United States on June 1, 1998.  In fact, the next day, Petitson joined the crew of the M/V Enchanted Capri in New Orleans.  Before the IJ and the BIA, Petitson repeatedly conceded that she entered the United States with the intention of working on a ship and that she did in fact work on the M/V Enchanted Capri.[5]  Given Petitson's "C-1/D" visa and the circumstances surrounding her entry, the record supports the BIA's finding that Petitson entered the United States in pursuit of her calling as a seafarer.  See Parzagonis, 747 F.2d at 1390; Matter of G-D-M-, 25 I. & N. Dec. at 84-85.

Petitson argues that she cannot be an alien crewman because she was issued a Form I-94 indicating that she was admitted as a "C-1" transit alien.  Specifically, Petitson contends that alien crewmen cannot be "admitted" into the United States and issued a Form I-94, but can be only "paroled" into the United States and issued a Form I-95 (Crewman's Landing Permit).  This argument ignores the fact that the "focal issue" of the crewman determination is the alien's reason for

---

[5]On appeal, Petitson contends for the first time that she never had any intention of joining a ship and did not join a ship after she entered the United States.  However, Petitson does not provide any record cites to support this assertion, and the record evidence contains objective indicia of her intent to enter the United States to work on a ship and establishes that she in fact worked on a ship.

10

entering the United States.  Petitson's "C-1/D" visa and the circumstances surrounding her entry indicate that she entered the United States to join the crew of the M/V Enchanted Capri.  Thus, Petitson was an alien crewman within the meaning of the INA.[6]

Moreover, a Form I-95 Landing Permit is required only when an alien crewman already working aboard a ship, which has entered a U.S. port, wants "to land temporarily" for such purposes as shore leave or to depart the United States. See INA § 252(a), 8 U.S.C. § 1282(a); 8 C.F.R. § 252.1; see also INA § 101(a)(13)(B), 8 U.S.C. § 1101(a)(13)(B) (providing that an alien crewman permitted to land temporarily is not considered admitted).  In contrast, Petitson traveled to the United States on an aircraft as a passenger, not as an employee, and was not seeking temporary landing privileges.  As such, Petitson was issued a Form I-94, not a Form I-95.  This does not mean, however, that Petitson was not

---

[6]In support of her argument, Petitson relies on In re Saturnino Orocay Baguis Jr., 2005 WL 1848389 (BIA May 6, 2005), a non-published, non-precedential, single-judge decision that an alien crewman must be presently employed as a crewmen when he enters the United States and cannot be an "intending crewman."  In so doing, In re Saturnino Orocay Baguis Jr. distinguished Matter of Goncalves, 10 I. & N. Dec. 277 (BIA 1963), a three-judge precedential decision.  However, in Matter of G-D-M-, a subsequent three-judge panel of the BIA rejected In re Saturnino Orocay Baguis Jr. and applied Matter of Goncalves to facts very similar to Petitson's.  See Matter of G-D-M-, 25 I. & N. Dec. at 84-85 & n.5.  Under the circumstances, we must defer to Matter of G-D-M-.  See Quinchia v. U.S. Att'y Gen., 552 F.3d 1255, 1258 (11th Cir. 2008) (explaining that Chevron deference does not apply to a non-precedential decision issued by a single member of the BIA that does not rely on existing BIA or federal court precedent).

an "alien crewman" for INA purposes.  As discussed above, that determination turns on Petitson's reason for entering the United States, not on the form issued to her at inspection.

Because Petitson was an alien crewman when she entered the United States, she was statutorily ineligible for adjustment of status.  See INA § 245(c), 8 U.S.C. § 1255(c).

**PETITION DENIED.**